**Ahmad AL–RAWAHNEH, Khawla Al–Rawahneh, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 00–4447.

United States Court of Appeals, Sixth Circuit.

May 17, 2002.

Before GUY and BATCHELDER, Circuit Judges; and WALTER, District Judge.*

PER CURIAM.

Petitioners, Ahmad Al–Rawahneh and his wife Khawla Al–Rawahneh, seek review of the Board of Immigration Appeals' dismissal of their appeals from the immigration judge's denial of their motion to reconsider the denial of their motion to reopen deportation proceedings. Petitioners, who overstayed their B–2 non-immigrant visitor visas, were ordered deported *in absentia* after they failed to appear at the hearing on January 3, 1992. Petitioners sought to reopen the proceedings to make application for suspension of deportation, relying on the fact that they did not receive notice of the hearing date and time. After review of the record and the arguments presented on appeal, we deny the petition and affirm the Board's decision.

### I.

Petitioners, natives and citizens of Jordan, were admitted to the United States as B–2 non-immigrant visitors on August 24, 1987, and were granted an extension to stay until January 31, 1989. They came to the United States with an infant son and have since had four more children born in the United States.[1] On April 21, 1991, Ahmad was working the cash register in his brother's store in Columbus, Ohio, when he was approached by an INS officer. Although Ahmad claimed to be a legal permanent resident, subsequent investigation revealed that he had over-

stayed his visa. Contacted at the store, Ahmad was asked to and did in fact meet with an INS officer in Cleveland, Ohio, on May 20, 1991. The INS report concerning Khawla Al–Rawahneh indicated that she was not asked to come in for an interview because she was reportedly pregnant and unable to travel.

On May 20, 1991, Orders to Show Cause (OSCs) were issued, charging each with being deportable under 8 U.S.C. § 1251(a)(1)(B) (1991).[2] The OSCs were served on May 21, 1991, by certified mail, return receipt requested, to their address at 219 Clinton Avenue, Columbus, Ohio. The return receipt, which references both file numbers, was signed by Khawla Al–Rawahneh on May 25, 1991.

On September 25, 1991, notices were sent to petitioners at 219 Clinton Avenue, advising them that a hearing would be held before an immigration judge on December 20, 1991. The notices were returned to the immigration court as undeliverable because petitioners had moved and left no forwarding address with the post office. In December 1991, the deportation hearing was rescheduled for January 3, 1992. Notices of the new date, sent to the address at 219 Clinton, were also returned as undeliverable because no forwarding address was on file with the post office.

When petitioners failed to appear on January 3, 1992, the proceedings were conducted *in absentia* and the immigration judge ordered that petitioners be deported to Jordan. The written decisions were also mailed to petitioners at the Clinton Avenue address. This time, however, the

---

* The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

1. Their children were born December 31, 1986; January 1, 1989; November 6, 1990; October 31, 1991; and September 20, 1994.

2. The deportation provisions have been redesignated as Section 237 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227 (1998). This occurred in 1996, however, and does not affect the proceedings in this case.

letters were not returned by the post office. Petitioners nonetheless claim that they did not receive notice of the deportation orders until a Freedom of Information Act request was made by their attorney in 1996.

On March 31, 1997, petitioners moved to reopen the deportation proceedings in order to make application for suspension of deportation. Petitioners argued that their failure to appear was not without reasonable cause because they did not receive the notices of hearing. Counsel stated that petitioners moved from the Clinton address to 107 West Como Road, Columbus, Ohio, in August 1991, and that the INS knew or should have known where they were residing because they had given their new address to an INS investigator in the Cleveland office. The INS opposed the motion.

On May 22, 1997, the immigration judge denied the motion to reopen in a written decision setting forth his reasons.

An in absentia deportation hearing can be reopened if the alien can establish that he had reasonable cause for his absence from the proceeding. *Matter of Ruiz,* Int. Dec. 3116 (BIA 1989).[1] Failure to receive notice is a reasonable cause for absence from the proceeding. If notice of the proceeding is not properly served upon the alien, the alien does not have a reasonable opportunity to be present. *Matter of Huete,* Int. Dec. 3144 (BIA, 1991).

---

[1] Because these proceedings were instituted on May 20, 1991, the requirement of "exceptional circumstances beyond the alien's control" contained in Section 242B of the Act do not apply.

The regulations regarding the service of documents are quite clear. When a deportation proceeding is initiated by the [INS], the charging document, the Order to Show Cause, must be given to the alien by personal service. 8 C.F.R. § 103.5a(c)(1) (1991). All other types of documents can be sent by routine service. 8 C.F.R. § 103.5a(d) (1991). Personal service can be accomplished through either personal delivery or certified mail sent return receipt requested. 8 C.F.R. § 103.5a(a)(2) (1991), *Matter of Huete, supra.* Routine service is mailing a copy of the document by ordinary mail to a person at her last known address. 8 C.F.R. § 103.5a(a)(1) (1991). In addition, the respondent is required to report any change of address to Immigration and Naturalization Service [within 10 days on Form AR–11]. 8 C.F.R. § 265.1 (1991).

The record establishes that all requirements for the service of notices to the respondents have been met. The Orders to Show Cause were mailed to each respondent at the address contained therein on May 21, 1991. In each case the Service has introduced into evidence Domestic Return Receipt cards (PS Form 3811) which were signed by the "Addressee" on May 25, 1991. *See* Exhibit 4. It therefore appears that each respondent was given knowledge of the pendency of these proceedings through personal service of the charging document.

Although it may be true that neither respondent received the notice of hearing (Exhibit 3), this appears due to the fact that they simply moved without notifying the Service or the Court, and did not leave a forwarding address.

The respondents have not submitted affidavits or any other evidence which would excuse or otherwise account for their absence.[2] Thus, their failure to attend their deportation hearing, thereby resulting in orders of deportation in absentia, appear to [be] actions entirely of their own making (e.g., changing addresses without notifying the Service or the Court) and do not constitute reasonable cause.

[2] Statements made in a brief, Motion or Notice of Appeal are not evidence and are thus not entitled to any significant evidentiary weight.

This order, mailed to petitioners' counsel, included notice that the decision would be final unless an appeal was filed within 30 days of the mailing of the decision. No appeal was filed.

Instead, petitioners moved for reconsideration and attached an affidavit stating both that they had moved and that they had advised an INS officer of their new address. On October 15, 1997, the immigration judge denied the motion to reconsider in a written decision that stated as follows:

A motion to reconsider is a request to reexamine the original decision in light of a change in law or to bring to the court's attention some fact or argument which was overlooked. *Matter of Cerna,* Interim Decision # 3163 (BIA 1991).

The present motion does neither. The respondents simply reiterate their earlier contention, albeit this time in affidavit form, that they had moved and that they provided the Service with their new address. This contention was addressed in connection with the earlier decision and the respondents have not shown either a change in law that would disturb that result or any fact or argument which was overlooked.

Petitioners filed timely appeals to the Board of Immigration Appeals (BIA) from the denial of reconsideration, arguing that their affidavit should have been treated as a fact or argument that had been overlooked; that failure to give actual notice violated due process; and that the INS had failed to make a good faith attempt to provide actual service. Petitioners also asserted that the judge abused his discretion in failing to ascertain from the INS file that (1) Khawla was not served with the OSC, (2) that the INS had called and visited Ahmad at his workplace, (3) that Ahmad went twice to the INS office in Cleveland, and (4) that the INS obtained a forwarding address for petitioners from the postal service on July 1, 1992. These "facts" are attested to by affidavit which also states that petitioners filed a forwarding address with the postal service "before January 3, 1992."

On October 20, 2000, the BIA dismissed the appeals, stating that:

A motion to reconsider requests that the original decision be reexamined in light of additional legal arguments, a change of law, or an argument or aspect of the case that was overlooked. In this case, the respondents' motion to reconsider consisted in the main of reassertions of the claims made by the respondents in the earlier phase of the proceedings, redacted in the form of an affidavit. Such changes to the form of a claim, with no change in the legal or factual basis of the claim, do not support a motion to reconsider. *See, e.g., Matter of Cerna,* 20 I & N Dec. 399, 402 (BIA 1991). The additional material accompanying the motion to reconsider gave the Immigration Judge no new grounds for finding the respondents to be truthful and persuasive in their assertions that reasonable cause existed for their failure to attend a deportation hearing. *See Matter of Patel,* 19 I & N Dec. 260 (BIA 1985), *aff'd,* 803 F.2d 804 (5th Cir.1986) (discussing 'reasonable cause'). Because the respondents did not appeal from the denial of the original motion to reopen, we are not presented with any issues relevant to that motion. *Cf. Matter of Cerna, supra* (discussing issues raised by motions to reconsider: treating a motion to reopen as, in part, a motion to reconsider).

This timely petition for review of the final order of the BIA followed.

## II.

Under § 242(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(b), as was in effect at the time of petitioners' deportation hearing in January 1992, a deportation hearing could be conducted *in absentia* if the alien had been given "a reasonable opportunity to be present" and "without reasonable cause faile[d] or refuse[d] to attend or remain in attendance at such proceeding." As for notice, § 242(b)(1) instructed the Attorney General to prescribe regulations providing the alien with "notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held." 8 U.S.C. § 1252(b)(1). This statute does not impose a more stringent notice requirement on the INS than is required by due process. *United States v. Estrada–Trochez,* 66 F.3d 733, 736 n. 1 (5th Cir.1995) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Due process does not require actual notice, but rather notice that is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314.

### A. Selective and Retroactive Application of § 242B

Congress amended the INA in 1990 and added a new § 242B. *See* 8 U.S.C. § 1252b, Pub.L. No. 101–649, 104 Stat. 4978 (1990). Section 242B required that more specific notices be afforded to aliens in the show cause order, including notice that any change of address or telephone number must be provided to the INS in writing, and imposed harsher penalties for

failing to appear. *See Lahmidi v. INS,* 149 F.3d 1011, 1013 (9th Cir.1998). Although enacted in 1990, § 242B only became effective for aliens who were served with orders to show cause after June 13, 1992. *Id.*[3]

Petitioners argue for the first time on appeal that the BIA erred by allowing the immigration judge to selectively and retroactively apply § 242B to petitioners without requiring the INS to include notice of either the obligation to provide written notice of any change of address or the consequences of failing to do so. This claim is without merit. In fact, the immigration judge specifically noted that § 242B did not apply to petitioners because the OSCs were served before the effective date of the amendment. Petitioners' OSCs, notices of hearing, and orders of deportation all preceded the effective date of § 242B. Our review of the record satisfies us that the standards and procedures set forth in § 242B were not applied in whole or part to petitioners' motion to reopen the deportation proceedings. Further, petitioners failed to preserve this issue for appeal because it was not raised in the proceedings before the BIA. *See Ivezaj v. INS,* 84 F.3d 215, 219 (6th Cir.1996); *Perkovic v. INS,* 33 F.3d 615, 620 n. 4 (6th Cir.1994).

### B. Denial of Motions to Reopen and Reconsider

We review the denial of motions to reopen or reconsider for abuse of discretion. *See INS v. Doherty,* 502 U.S. 314, 324, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *Stone v. INS,* 13 F.3d 934 (6th Cir.1994). The BIA explained in *Matter of Cerna,* 20 I & N Dec. 399 (1991), that motions to reopen and motions to reconsider are distinct motions with different requirements.

---

**3.** Section 242B was repealed in 1996 through the enactment of the IRRIRA, Pub.L. No. 1040208, 110 Stat. 3009–615 (1996). However, markedly similar provisions now appear in 8 U.S.C. §§ 1229 and 1229a.

A motion to reconsider "is a request that the Board reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked, while [a] motion to reopen is usually based upon new evidence or a change in factual circumstances."

*Cerna,* at 402 n. 2 (citation omitted).

Petitioners did not appeal from the denial of the motion to reopen and, consequently, the BIA did not abuse its discretion in concluding that issues concerning the denial of that motion were not properly before it. *See Anssari–Gharachedaghy v. INS,* 246 F.3d 512, 514 (6th Cir.2000) (no abuse of discretion in refusing to consider untimely appeal from immigration judge's decision). That includes the new claim advanced before the BIA that the immigration judge erred in finding that Khawla had been personally served with the Order to Show Cause.

■ Petitioners argue that the BIA abused its discretion in affirming the denial of reconsideration because their affidavit should have been treated as presenting a fact or argument that had previously been "overlooked." Petitioners contend that the immigration judge first disregarded their claim to have given their new address to an INS investigator because it was not in affidavit form, and then refused to reconsider that decision because the affidavit merely reiterated the earlier contention that they had provided their new address to an INS investigator at an unspecified time. Given the limited grounds for a proper motion for reconsideration, we cannot find an abuse of discretion in the BIA's decision to affirm the judge's refusal to reconsider the previously asserted claim simply because it was now made by way of affidavit.

■ Even if we were to find otherwise, it would not have been an abuse of discre-

tion for the BIA to conclude that petitioners still failed to demonstrate reasonable cause for their failure to attend the deportation hearing. We assume, as did the immigration judge, that petitioners did not receive actual notice of the deportation hearing. Although they moved in August 1991, petitioners did not request that mail be forwarded to their new address in time to have the notice of hearing forwarded to them in December 1991. Both the motion to reconsider and the motion to reopen rested on the contention that the notices should have been sent to their new address or an attempt been made to contact Ahmad at work.

Even before the changes made by § 242B, however, an alien had a statutory duty to notify the Attorney General in writing of any change of address within ten days of the date of such change. 8 U.S.C. § 1305(a); *see also* 8 C.F.R. § 265.1 (1991). Further, notice of hearing sent by first-class mail to the last known address has been held to satisfy due process even if the notice is returned as undeliverable. *See Estrada–Trochez,* 66 F.3d at 736 & n. 1.

In *Estrada–Trochez,* an order of deportation was entered *in absentia* after the notice of hearing was sent by first-class mail and returned as undeliverable. Although he moved without informing the government of his change of address as required by § 1305, Estrada–Trochez argued that the INS could easily have notified him of the hearing by using the names and addresses of several family members that had been included in his petition for waiver under 8 U.S.C. § 1182(c) (§ 212(c) waiver). The Fifth Circuit rejected this claim and concluded that notice sent to his last known address satisfied due process.

Similarly, the Eleventh Circuit recently rejected a due process challenge to an order of deportation that was entered *in*

*absentia* in *Dominguez v. United States Attorney General,* 284 F.3d 1258 (11th Cir. 2002). The notice of hearing was sent to the address Dominguez had given in her formal submission, but she had moved and did not receive it. Dominguez argued that the notice of hearing should have been sent to another address she had given to INS agents during an oral interview. In rejecting the due process challenge, the court relied not only on the provisions adopted in § 242B (*see* 8 U.S.C. § 1229(c)), but also on the statutory duty imposed by § 1305. It was not an abuse of discretion to find that petitioners failed to appear without reasonable cause because they moved without leaving a forwarding address.

We **DENY** the petition for review and **AFFIRM** the BIA's dismissal of petitioners' appeals from the denial of their motion for reconsideration.